IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NETLIST, INC., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> SAMSUNG ELECTRONICS CO., LTD., § <br> SAMSUNG ELECTRONICS AMERICA, § <br> INC., SAMSUNG SEMICONDUCTOR, § <br> INC.; AVNET, INC., § <br> § <br> § <br> Defendants. § <br> § | C.A. No. 2:25-cv-557-JRG <br><br> JURY TRIAL DEMANDED <br> (Lead Case) | |
| NETLIST, INC., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> MICRON TECHNOLOGY, INC., § <br> MICRON SEMICONDUCTOR § <br> PRODUCTS, INC., AND MICRON § <br> TECHNOLOGY TEXAS LLC; AVNET, § <br> INC., § <br> § <br> Defendants. § | C.A. No. 2:25-cv-558-JRG <br><br> JURY TRIAL DEMANDED <br> (Member Case) | |

**AVNET'S OPPOSED MOTION TO SEVER AND STAY**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. PROCEDURAL HISTORY ................................................................................................. 1

    A. Netlist Sued Micron In This District (An Improper Venue) And Later Added Avnet, A Non-Exclusive Micron Distributor, To The Case ................................... 1

    B. Avnet's Role (Or Lack Thereof) In Making, Using, Importing, Selling, And Offering To Sell The Accused Micron Products. .................................................... 3

III. ARGUMENT ....................................................................................................................... 4

    A. Netlist's Claims Against Avnet Should Be Severed And Stayed. .......................... 4

        1. Netlist's Claims Against Avnet Are Peripheral To Those Against Micron, The Sole Manufacturer Of The Accused Products. ...................... 5

        2. Netlist's Claims Against Micron Will Resolve The Major Issue Concerning Its Claims Against Avnet. ....................................................... 7

    B. The Traditional Stay Factors Weigh In Favor Of Severance And A Stay ............... 8

        1. A Stay Will Not Prejudice Or Disadvantage Netlist .................................. 8

        2. A Stay Will Simplify The Issues Before This Court And The Trial. ......... 9

        3. The Early Stage Of The Case Supports A Stay. ...................................... 10

IV. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Vehicular Scis. LLC v. Toyota Motor Corp.*,
  2014 WL 3385149 (E.D. Tex. July 10, 2014) ............................................................................6

*In re Amazon.com, Inc.*,
  2022 WL 17688072 (Fed. Cir. Dec. 15, 2022) ..........................................................................9

*Dali Wireless, Inc. v. AT&T Corp.*,
  2023 WL 2898423 (E.D. Tex. Apr. 8, 2023) .............................................................................8

*Fractus, S.A. v. AT&T Mobility LLC*,
  2019 WL 3253639 (E.D. Tex. July 19, 2019) ........................................................................5, 6

*Glenayre Elecs., Inc. v. Jackson*,
  443 F.3d 851 (Fed. Cir. 2006) ...................................................................................................8

*NFC Tech. LLC v. HTC Am., Inc.*,
  2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ..........................................................................9

*Norman IP Holdings, LLC v. TP-Link Techs., Co.*,
  2014 WL 5035718 (E.D. Tex. Oct. 8, 2014) ...........................................................................10

*Richmond v. Forever Gifts, Inc.*,
  2015 WL 11120883 (N.D. Tex. Mar. 18, 2015) ........................................................................6

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
  2017 WL 3712912 (E.D. Tex. July 12, 2017) ...................................................................5, 6, 7

*Secure Axcess, LLC v. Nintendo of Am. Inc.*,
  No. 2:13-CV-32-JRG, Dkt. 133 (E.D. Tex. Feb. 10, 2014) .....................................................10

*Shifferaw v. Emson USA*,
  2010 WL 1064380 (E.D. Tex. Mar. 18, 2010) ...................................................................6, 7, 8

*TiVo Inc. v. AT&T Inc.*,
  2010 WL 11436066 (E.D. Tex. Sept. 17, 2010) ........................................................................8

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014) .................................................................................................9

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................................................2

Idaho Code § 30-25-702(b)(2)(C)...................................................................................................1

**Other Authorities**

Federal Rule of Civil Procedure 21 ...............................................................................................5

## TABLE OF EXHIBITS

**Mullins Declaration**

| Exhibit | Description |
|---------|-------------|
| 1 | Plaintiff Netlist Inc.'s Disclosure of Asserted Claims and Infringement Contentions (Micron-558), dated July 16, 2025 [FILED UNDER SEAL] |
| 2 | Plaintiff Netlist Inc.'s Disclosure of Asserted Claims and Infringement Contentions (Micron/Avnet-558), dated September 12, 2025 [FILED UNDER SEAL] |
| 3 | Order Staying Case, Dkt. 133, *Secure Axcess, LLC v. Nintendo of Am. Inc.*, No. 2:13-CV-32-JRG (E.D. Tex. Feb. 10, 2014) |

**Foley Declaration**

| Exhibit | Description |
|---------|-------------|
| A | Distribution Agreement between Avnet, Inc. and Micron Semiconductor Products, Inc., dated August 1, 2024 [FILED UNDER SEAL] |
| B | List of Micron Part Nos. Accused of Infringing U.S. Patent No. 10,025,731 |

i

I.   INTRODUCTION

After Micron[1] filed its motion to dismiss for improper venue, Plaintiff Netlist, Inc., added Avnet, Inc.—a non-exclusive Micron distributor with an office in this District—to this case in a transparent attempt to manipulate venue. Netlist accuses Avnet of infringement based on its sales of Micron products that Micron designs, manufactures, and sells to Avnet. The claims against Avnet are, at best, peripheral to those against Micron. Micron is the only manufacturer that makes and sells the accused memory modules to end customers and distributors, like Avnet. As a non-exclusive distributor, Avnet has no control over the design or manufacture of Micron's memory modules. Moreover, Avnet does not even sell the vast majority of the modules that Netlist accuses of infringement. Resolving Netlist's claims against Micron will resolve the major issue in Netlist's case against Avnet, namely, whether Micron's accused memory modules infringe the asserted patents. Given Avnet's peripheral involvement and that Micron is the "true defendant," severance and a stay are appropriate. Avnet thus respectfully requests that the Court sever Netlist's claims against Avnet and stay all proceedings in the severed action pending resolution of Netlist's claims against Micron for infringement of the '087 and '731 patents.

II.  PROCEDURAL HISTORY

A.   **Netlist Sued Micron In This District (An Improper Venue) And Later Added Avnet, A Non-Exclusive Micron Distributor, To The Case**

This case began in May 2025 when Netlist sued Micron for alleged infringement of U.S.

---

[1] Defendants Micron Technology, Inc. ("Micron Technology"), Micron Semiconductor Products, Inc. ("Micron Semiconductor"), and Micron Technology Texas, LLC ("Micron Texas") are referred to collectively, for convenience, as "Micron." However, for the avoidance of doubt, references to "Micron" designing or manufacturing products refer to Micron Technology or its relevant subsidiary that engage in such design or manufacture. Micron Texas has been dissolved and has no operations, but is participating in this case as part of the winding up process. *See* Idaho Code § 30-25-702(b)(2)(C) ("In winding up its activities and affairs, a limited liability company … [m]ay … [p]rosecute and defend actions and proceedings.").

1

Patent No. 12,308,087 (the "'087 patent"). C.A. No. 2:25-cv-558-JRG ("558"), Dkt. 1. Micron promptly moved to dismiss for improper venue because Micron did not have (and still does not have) a regular and established place of business in the District. *Id.*, 558 Dkt. 11 at 6-9.

Netlist added Avnet, a non-exclusive distributor of Micron products, to this case on July 8, 2025, in its First Amended Complaint ("FAC"). Dkt. 15. The FAC alleges that Micron and Avnet infringe two Netlist patents: the '087 patent and U.S. Patent No. 10,025,731 (the "'731 patent"). *Id.* ¶¶ 38-61. Netlist accuses different types of products of infringing each patent. For the '087 patent, the FAC defines the accused products as "Accused HBM[2] Products," which include "any Micron HBM3E, and newer products (e.g., HBM4; HBM4e)." *Id.* ¶ 32. For the '731 patent, the accused products are "Accused DDR5 Products," which include "any Micron DDR5 products" like "RDIMMs and MRDIMMs." *Id.* ¶ 34.

Following the FAC, Micron again filed a motion to dismiss for improper venue. Dkt. 28. Briefing on that motion is on hold while Micron and Netlist complete venue discovery. *See* Dkts. 36, 55. Additionally, on October 10, 2025, Micron moved to stay the proceedings in this case as to Micron, pending the Court's resolution of the venue issues raised in Micron's motion to dismiss. *See* Dkt. 86.

Avnet also filed a motion to dismiss a portion of the FAC because venue is improper as to Netlist's claim that Avnet directly infringes the '087 patent. Dkt. 69. Avnet has not committed any acts of infringement in this District (or any other location) with respect to that patent, as required for proper venue under 28 U.S.C. § 1400(b). *Id.* at 6-10. As Avnet demonstrated in its motion, Avnet is not a manufacturer and does not manufacture any Micron products, including the

---

[2] "HBM" refers to "high bandwidth memory," which the FAC explains "is a type of high-speed computer memory technology" which has a configuration of memory dies that "differs from" other memory technologies like "DDR5 DIMM formats." *Id.* ¶ 31.

2

HBM products accused of infringing the '087 patent. Dkt. 69-1 (Foley MTD Decl.) ¶ 6. Avnet also does not use, sell, offer for sale, or import Micron HBM products because "Micron handles all sales and marketing for its HBM products in-house" and "has not made HBM products available to distributors, like Avnet, to sell." *Id.* ¶ 7. Briefing on Avnet's motion to dismiss also is on hold pending completion of venue discovery. *See* Dkt. 78 (setting schedule for briefing and venue discovery).

      **B.**    **Avnet's Role (Or Lack Thereof) In Making, Using, Importing, Selling, And Offering To Sell The Accused Micron Products.**

Avnet is a leading global electronic component technology distributor and solutions provider. Foley Decl. ¶ 4. In that role, it has relationships with more than 200 manufacturers of electronic components, including Micron. *Id.* As relevant to this case, Avnet functions as a non-exclusive distributor of certain Micron products. *Id.* ¶ 5; *id.* Ex. A. Aside from Avnet, Micron has several other non-exclusive distributors in the U.S. *Id.* ¶ 6. Pursuant to the distribution agreement between Avnet and Micron Semiconductor, Micron Semiconductor is providing Avnet's defense and has agreed to indemnify Avnet in connection with this lawsuit. *Id.* ¶ 7.

As an electronics distributor, Avnet does not manufacture any memory products, including the accused Micron Products. *Id.* ¶ 8. Micron is the sole manufacturer of those products. *Id.* ¶ 5. With respect to the Micron HBM products accused of infringing the '087 patent, Avnet does not import, sell, offer to sell, or use those products because Micron does not make those products available to its distributors. *Id.* ¶ 10. With respect to the Micron DDR5 products accused of infringing the '731 patent, Avnet has no role in the design or manufacture of those products. *Id.* ¶¶ 11, 13-14. Since January 2022, Avnet has sold only a small fraction (less than 20) of the more than 150 Micron part numbers that Netlist has identified in its contentions as infringing the '731 patent. *Id.* ¶ 12.

3

Avnet provides its own customers with advice on how to design their own products, as it relates to the products' use of electronic components (for example, sensors, power supplies, or memory modules). *Id.* ¶ 13. For example, Avnet provides advice to its customers about which components they should select, the performance of those components, and the robustness (or lack thereof) of supply chains for potential components. *Id.* But Avnet's design services do not include the design of memory modules, like the accused Micron DDR5 modules, because Avnet has no control over that process. *Id.*

Netlist's infringement contentions reflect Avnet's minimal (or non-existent) role in the alleged infringement. Netlist neglected to even ***mention*** Avnet in its currently operative infringement contentions. *See* Mullins Decl. Ex. 1; *id.* ¶ 5. When Avnet's counsel pointed out that omission, Netlist served new contentions on Avnet on September 12, 2025, nearly two months after the deadline to do so pursuant to the Court's Docket Control Order. *See id.*, ¶ 6; Dkt. 29. Those contentions identify Avnet's role in the alleged infringement as that of Micron's distributor. *See, e.g.,* Mullins Decl. Ex. 2 at 8 ("[A]dditional patents, claims, and infringement claim charts may become applicable as information regarding ***Avnet's distribution of Micron's instrumentalities*** is acquired through the discovery process and otherwise." (emphasis added)).

### III.  ARGUMENT

#### A.  Netlist's Claims Against Avnet Should Be Severed And Stayed.

Avnet is a mere non-exclusive distributor of some of the accused Micron products. Its only allegedly infringing conduct is selling certain products designed by, manufactured by, and purchased from Micron. Even there, its role is peripheral: it does not sell any Micron products accused of infringing the '087 patent, and it sells only a small fraction of the Micron products accused of infringing the '731 patent. Resolution of Netlist's infringement allegations against

4

Micron will resolve all issues as to Avnet. Accordingly, the Court should sever Netlist's claims against Avnet and stay the severed action.

Under Federal Rule of Civil Procedure 21, a court may "sever any claim against a party." Fed. R. Civ. P. 21. One circumstance in which courts routinely sever claims is "when a patent owner has sued both a manufacturer and its customers for infringement of the same patents based on the same accused products. *Saint Lawrence Commc'ns LLC v. Apple Inc.*, 2017 WL 3712912, at *1 (E.D. Tex. July 12, 2017). In that circumstance, "the manufacturer is frequently considered to be the 'true defendant,' and the burdens of litigation should not be imposed on the customer." *Id.* "[S]everance of claims against a manufacturer from claims against that manufacturer's customers pursuant to Rule 21 is appropriate where '(1) the remaining claims are peripheral to the severed claims' and '(2) adjudication of the severed claims would potentially dispose of the remaining claims.'" *Fractus, S.A. v. AT&T Mobility LLC*, 2019 WL 3253639, at *2 (E.D. Tex. July 19, 2019) (citation omitted). Regarding the first factor, "where a single manufacturer is the only entity in the U.S. who makes and sells the only accused products to the retailers, a patent infringement claim against a retailer is peripheral to the claims against the manufacturer." *Id.* (citation omitted). Regarding the second factor, "the manufacturer's case need only have the potential to resolve 'major issues' concerning the claims against the customer—not every issue—in order to justify a stay of customer suits." *Id.* (citation omitted).

Each of the foregoing factors weighs in favor of a stay.

### 1. Netlist's Claims Against Avnet Are Peripheral To Those Against Micron, The Sole Manufacturer Of The Accused Products.

As to the first factor, the claims against Avnet are peripheral to those against Micron because Micron is a "single manufacturer [that] is the only entity in the U.S. [that] makes and sells the only accused products" to its own end customers and to distributors, like Avnet, to sell to their

5

customers. *Id.*; Foley Decl. ¶ 5. Avnet has no control over or unique knowledge about whether Micron's memory modules infringe the asserted claims because it has no say in the design or manufacture of those modules. *Id.* ¶¶ 8, 13-14. Avnet is so peripherally involved in the alleged infringement that Netlist neglected even to ***mention*** Avnet in its operative infringement contentions. *See* Mullins Decl. Ex. 1. Avnet's lack of involvement in the alleged infringement establishes that the claims against it are peripheral to those against Micron. *See Saint Lawrence*, 2017 WL 3712912, at *2 (holding claims against resellers were peripheral, in part because, "the Carrier Defendants (as their corporate representatives have testified) resell the phone, playing no role in the development, design, or implementation of the relevant software code"); *Shifferaw v. Emson USA*, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010) (holding claims against retailers were peripheral where there was no evidence that they "had any role in the design or manufacture of the accused products"); *Richmond v. Forever Gifts, Inc.*, 2015 WL 11120883, at *1 (N.D. Tex. Mar. 18, 2015) (holding that infringement claims against "'second-hand entities' [like retailers that] had no involvement in and no essential knowledge about the alleged infringement, which begins at the design and manufacture phases" were peripheral).

Additionally, pursuant to the distribution agreement between Avnet and Micron Semiconductor, Micron Semiconductor is providing Avnet's defense and has agreed to indemnify Avnet in connection with this lawsuit. Foley Decl. ¶ 7. Courts routinely conclude that agreements to defend and indemnify a retailer or distributor indicate that a manufacturer is the "real party in interest" and that the claims against the retailer or distributor are peripheral. *See, e.g.*, *Richmond*, 2015 WL 11120883, at *2 ("Forever Gifts has agreed to defend and indemnify Walgreens which courts have held establishes Forever Gifts as the 'real party in interest' and Walgreens, the indemnified defendant, as peripheral."); *Am. Vehicular Scis. LLC v. Toyota Motor Corp.*, 2014

6

WL 3385149, at *3 (E.D. Tex. July 10, 2014) ("Gulf States is 'fully indemnified' by TMS and has 'no financial stake or interest of its own in any of these cases.' … Thus the claims against Gulf States are clearly peripheral to the claims against the remaining Toyota Defendants."); *Shifferaw*, 2010 WL 1064380, at *3 ("Amazon and Academy are only peripherally involved …. [i]ndeed, Mishan has indemnified and is funding the defense of both Amazon and Academy.").

Moreover, Netlist's claims against Avnet cover only a small subset of the totality of accused Micron products. As Avnet explained in its motion to dismiss the '087 patent claim, Micron does not make its HBM products available to distributors. Dkt. 69. Avnet thus did not and could not have committed any "acts of infringement" with respect to those products. *See id.* As for the '731 patent, in the last several years, Avnet has sold less than 20 of the more than 150 Micron DDR5 products that Netlist accuses of infringing that patent. Foley Decl. ¶ 12.

### 2. Netlist's Claims Against Micron Will Resolve The Major Issue Concerning Its Claims Against Avnet.

As to the second factor, the resolution of Netlist's infringement claims against Micron will resolve the major issue concerning its claims against Avnet, namely, whether the subset of the accused products that Avnet sells infringe the asserted patents. "If [Micron] is not found liable, then [Netlist] has no claims against [Avnet]." *See Shifferaw*, 2010 WL 1064380, at *3 (holding second factor weighed in favor of severance). Moreover, Avnet will agree to be bound by a final judgment as to Micron's liability for infringement of the asserted patents and a final judgment on Micron's challenges to the validity of the asserted patents. Where a distributor or retailer agrees to be bound by the resolution of infringement and invalidity issues against a manufacturer, courts have concluded that the second factor weighs in favor of severance and a stay. *See Saint Lawrence*, 2017 WL 3712912, at *2 (concluding the second factor weighed in favor of severance and a stay where party "agree[d] to be bound by the invalidity and infringement rulings in th[e manufacturer's

case]"); *TiVo Inc. v. AT&T Inc.*, 2010 WL 11436066, at *3 (E.D. Tex. Sept. 17, 2010) ("The second factor … appears to be adequately addressed by AT&T Inc.'s offer that it 'will stipulate to be bound by any rulings of the transferee court ….'").

### B. The Traditional Stay Factors Weigh In Favor Of Severance And A Stay

Courts considering whether to stay an action against an accused manufacturer's customer also consider "the traditional stay factors, which include (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issue in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Dali Wireless, Inc. v. AT&T Corp.*, 2023 WL 2898423, at *3 (E.D. Tex. Apr. 8, 2023). Here, each of those factors similarly weighs in favor of a stay.

#### 1. A Stay Will Not Prejudice Or Disadvantage Netlist.

As discussed *supra* § II(B), Avnet has no unique insights into the accused products in this case as it either does not sell them and/or had no role in their design or manufacture. Avnet's absence from the discovery process thus will not harm Netlist's case. *See Shifferaw*, 2010 WL 1064380, at *3 (finding severance appropriate where "this is not a case where severance will create multiple lawsuits that have to be developed in their entirety").

A stay also will not impair Netlist's ability to secure effective relief should it ultimately prevail on its claims against Micron. Netlist cannot recover twice for Micron's sales of the asserted products to its distributors and the distributors' subsequent resale of those products to their customers. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 872 (Fed. Cir. 2006) ("[W]hen a patentee receives full compensation from a manufacturer for the infringing activities of the manufacturer and its customers, the patentee cannot collect further payment from a party alleged to contribute to the same infringing activities."). Additionally, Netlist primarily seeks money damages for the alleged infringement, and none of the asserted patents are set to expire anytime

8

soon. A stay would thus, at most, "delay[] [Netlist's] realization of … damages," not leave it without a remedy. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). Under these circumstances, Netlist's interest in avoiding delay in the vindication of its patent rights—an interest "present in every case in which a patentee resists a stay"—cannot alone defeat this stay motion. *NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015).

Moreover, any disadvantage to Netlist caused by the stay would be entirely the result of Netlist's litigation tactics. Adding Avnet to this case, following Micron's motion to dismiss for improper venue, was a transparent attempt by Netlist to manipulate venue. Netlist joined Avnet, just one of Micron's U.S. distributors, *see* Foley Decl. ¶ 6, to the case in its FAC solely because it has an office in this District, *see* Dkt. 15 at ¶ 9. The Federal Circuit has cautioned that courts must "guard against manipulative measures" designed to interfere with challenges to venue and held that severance is appropriate in the face of such attempts at venue manipulation. *In re Amazon.com, Inc.*, 2022 WL 17688072, at *3 (Fed. Cir. Dec. 15, 2022) (granting petition for a writ of mandamus and ordering court to sever claims where plaintiff added Amazon's "only Western District of Texas-based online reseller out of a list of approximately 150 identified online resellers—after Amazon filed its first motion to transfer").

### 2. A Stay Will Simplify The Issues Before This Court And The Trial.

A stay will allow the Court to defer consideration of issues specific to Avnet (e.g., whether it has committed acts of infringement of any of the accused products, whether it is liable for pre-suit willful or induced infringement) until the threshold issues of whether the accused Micron products infringe valid claims of the asserted patents are adjudicated. Severing the claims as to Avnet will streamline any future trial in this case and avoid further discovery disputes relating to Avnet.

### 3. The Early Stage Of The Case Supports A Stay.

Fact discovery is still in an early stage and trial is a year-and-a-half away. *See* Dkt. 29 (Docket Control Order). A stay is appropriate when "there remains a significant amount of work ahead for the parties and the court," although "[a] case need not be in its infancy to warrant a stay." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014). The Court held a scheduling conference on July 16, 2025, and the parties have only recently reached agreement on the docket control, discovery, and protective orders in this case—the docket control order was signed by the Court on July 24, 2025, and the discovery and protective orders were signed by the Court on August 11, 2025. *Cf. Secure Axcess, LLC v. Nintendo of Am. Inc.*, No. 2:13-CV-32-JRG, Dkt. 133 at 1 (E.D. Tex. Feb. 10, 2014) (Mullins Decl., Ex. 3) (finding in a case where claim construction briefing had just begun that "a short stay pending resolution of" venue issues likely would simplify issues in the case). A stay is particularly appropriate at this stage, where the parties have not yet incurred the significant burdens associated with extensive discovery, claim construction, and trial preparation. *See Norman*, 2014 WL 5035718, at *3.

## IV. CONCLUSION

For the foregoing reasons, the Court should sever Netlist's claims as to Avnet and stay all proceedings in the severed action pending resolution of Netlist's claims against Micron for infringement of the '087 and '731 patents.

10

Dated:  November 5, 2025

Respectfully submitted,

    */s/ G. Blake Thompson*
**G. Blake Thompson**
Texas Bar No. 24042033
Blake@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
112 East Line Street, Suite 304
Tyler, TX 75702
Tel: (903) 657-8540
Fax: (903) 557-6003

Jared Bobrow (CA State Bar No. 133712)
Jason Lang (CA State Bar No. 255642)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Tel: (650) 614-7400
Fax: (650) 614-7401
jbobrow@orrick.com
jlang@orrick.com

Sarah K. Mullins (CA State Bar No. 324558)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
405 Howard Street
San Francisco, CA 94105-2669
Tel: (415) 773-4572
Fax: (631) 790-4932
sarahmullins@orrick.com

***Attorneys for Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed on November 5, 2025, and Defendant served a true and correct copy of the foregoing document on Plaintiff's counsel of record by electronic mail.

<em>/s/ G. Blake Thompson</em><br>
<strong>G. Blake Thompson</strong>

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), I hereby certify that, on October 30, 2025, counsel for Defendants, Sarah Mullins, Jared Bobrow, and me, met and conferred via telephone with counsel for Plaintiff, Blair Silver, on this Motion. Jared Bobrow and Blair Silver conferred again on November 3, 2025. Counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by this Motion. The parties are thus at an impasse.

<em>/s/ G. Blake Thompson</em><br>
<strong>G. Blake Thompson</strong>

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

<em>/s/ G. Blake Thompson</em><br>
<strong>G. Blake Thompson</strong>